IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREL FLOWERS,
                Plaintiff,

v.                                              No. CIV 1:19-00148 RB/SCY

MATHESON TRI-GAS, INC.,
                Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Laurel Flowers was previously employed as a site manager for Defendant Matheson Tri-Gas, Inc. Ms. Flowers alleges that Matheson unlawfully terminated her employment due to discrimination based on her gender and in retaliation for her lawful reporting under New Mexico's Pay Equity Initiative. Matheson moved for summary judgment, and Ms. Flowers responded with a three-page brief. Because Ms. Flowers failed to specifically controvert Matheson's factual assertions or make any arguments regarding her claims, the Court will grant summary judgment to Matheson and dismiss this case.

**I.    Legal Standards**

**A.    Summary Judgment Standard of Review**

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* The moving party bears the initial responsibility of "show[ing] that there is an

absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The respondent may not simply "rest on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 259; *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.") (quotation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In a response to a motion for

summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).

**B.      Relevant Local Rules**

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "**All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.**" *Id.* (emphasis added). "The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion." *Id.*

Ms. Flowers fails to follow Local Rule 56 in that she did not specifically controvert any of Matheson's facts. (*See* Doc. 124.) To the extent Ms. Flowers fails to controvert Matheson's recitation of the material facts, the Court deems them undisputed. Despite Ms. Flowers' fatal flaws in failing to comply with Local rule 56.1(b), the Court will consider the response and address the merits of her claims.

## II.   Statement of Facts[1]

Defendant Matheson Tri-Gas, Inc. is a supplier of compressed gases and equipment. MATHESON, THE GAS PROFESSIONALS, http://www.mathesongas.com/matheson-overview (last visited Jan. 7, 2021). Plaintiff Laurel Flowers is a former employee of Matheson; she worked at Matheson for 21 years. (Doc. 117-1 at 11–12.) Ms. Flowers held various positions throughout her time at Matheson, but most recently she was a site manager. (*Id*. at 13–14.)

Matheson's Equal Employment Opportunity Policy states:

Any employees with questions or concerns about equal employment opportunities in the workplace are encouraged to bring these issues to the attention of the Senior Vice President of Human Resources. We will not allow any form of retaliation against individuals who raise issues of equal employment opportunity in good faith. To ensure our workplace is free of artificial barriers, violation of this policy will lead to disciplinary action, up to and including discharge.

(*Id*. at 130.) Other than an email Ms. Flowers sent when she was terminated, she never spoke to anyone about her concerns regarding equal employment opportunities while she was a Matheson employee. (*Id*. at 22–23.)

Matheson has various policies and practices to which it expects its employees to adhere. Relevant to this lawsuit, Matheson has a Corporate Purchasing Card Program, which governs how employees may use a purchasing card to pay for certain work-related services. (*See id.* at 113–19.) The policy does not allow the purchases of enumerated materials and services, including travel and entertainment, personal expenses, office expenses, subscriptions, and dues and membership fees. (*Id*. at 113.) The policy also disallows any personal expenses and states that "[a] card used out of compliance with the guidelines established for this program can result in severe consequences, up to and including termination of employment." (*Id*. at 115.)

---

[1] Ms. Flowers only submitted a three-page response to Matheson's Motion for Summary Judgment. This has made the Court's job of presenting the facts in a light most favorable to Plaintiff very challenging.

Matheson also has an attendance policy, which requires "employees to maintain prompt, dependable attendance." (*Id*. at 121.) The attendance policy requires "[e]mployees . . . to obtain approval from their supervisor at least twenty-four hours before an anticipated lateness or early departure." (*Id*.) The policy further states that "[i]ndividual incidents of paid or unauthorized absences or tardiness will be reviewed over a period of months to determine whether a pattern has developed indicating an excessive or unacceptable degree of absenteeism or tardiness." (*Id*.)

Next, Matheson has set out general disciplinary guidelines in its handbook, which state that "Matheson reserves the right to take any disciplinary action Matheson considers appropriate, including termination, at any time." (*Id*. at 123.) The Disciplinary Guidelines include a non-exhaustive list of examples of conduct that could result in immediate termination, including dishonesty, refusal or failure to follow directions from management, and violations of Matheson's employment policies. (*Id*.) Lastly, Matheson has a policy governing employment of relatives. The policy provides:

> To avoid potential conflicts of interests or related issues in the workplace, relatives of present Matheson employees may be ineligible for employment with Matheson if employment of the relative of the current employee would result in a direct supervisory relationship or in job positions in which a conflict of interest could arise. 'Relatives' are defined to include spouses, children, siblings and parents.

(*Id*. at 127.)

In August of 2017, Ms. Flowers emailed Matheson's human resources department requesting someone to fill out a Pay Equity Reporting Form,[2] which was required when submitting contract bids with the State of New Mexico.[3] (*Id*. at 41–42.) On August 17, 2017, Matheson's

---

[2] The Pay Equity Reporting Form requests the following information during the current calendar year: "(1) the number of employees; (2) the percentage of each gender in the workforce; . . . (3) the number of each gender in each job title, pay band, or similar job classification system . . . ; [and] (4) the percentage of gender pay gaps, if any, by job title, job category, or pay band, or similar job classification system . . . ." N.M. Exec. Order 2009-49, at *4 (Dec. 18, 2009), https://nmdigital.contentdm.oclc.org/digital/collection/p267801coll5/id/3429/.
[3] The New Mexico Pay Equity Initiative, Executive Order 2009-049, was initiated in 2010 to aid "in identifying and combating pay inequity and job segregation in the State of New Mexico. . . ." *Executive order #2009-049*, NEW

director of human resources, Deborah Tamborrino, informed Ms. Flowers that the company would not be able to provide the requested information. (*Id*. at 213.) In response, Ms. Flowers sent an email reiterating her request and stated:

> We have three [Requests for Proposals] in process for the State of NM. I am being told that if we do not provide them with our Pay Equity Form, we will not be awarded contracts. One RFP that is ready to award to us, is pending receipt of this form. Is there any way we can get this information? This is a huge contract and we need to get the award. I have attached the Faq's sheet about this form, and do not see any way we are exempted from providing the information if we want to do business with the state of NM.

(*Id.* at 156.) Although Matheson did not submit the Pay Equity Reporting Form, the State of New Mexico awarded it the contract. (*See id*. at 189–91.) On June 7, 2018, Ms. Flowers again requested assistance with getting a Pay Equity Reporting Form completed to submit with a different bid. (*Id*. at 45–46.) Matheson did not submit the Pay Equity Reporting Form but again won the bid. (*Id*. at 45.) Ms. Flowers specified that she was not requesting this pay equity information for her own purposes related to her site manager position but only to obtain the contracts. (*Id*. at 48.)

Ms. Flowers made additional pertinent requests of human resources. In early 2018, employees Anthony Crespin (male) and Bridget Alderete (female) asked her for pay increases. (*Id*. at 34–35.) On February 26, 2018, Ms. Flowers requested a market study report on the average salary of employees in the Albuquerque area who held the same positions as Alderete and Crespin. (*Id*. at 77.) She stated that Alderete and Crespin had "both worked for Matheson for over a year and we[re] doing very well and we want to reward them . . . ." (*Id.*) That same day, Ms. Flowers was provided the requested report and advised that a "[s]upervisor will need to complete [Personnel Action Forms] . . . [and she should] not present to employees until approved . . . ." (*Id.*)

---

MEXICO PAY EQUITY INITIATIVE, at *1 (Dec. 18, 2009), www.hsd.state.nm.us. It requires companies seeking to do business with New Mexico state agencies to company with the requirement of Pay Equity Reporting Forms, as noted above. *Id*.

On August 23, 2018, Matheson terminated Ms. Flowers for various violations of company policies and procedures. She was provided the following reasons for her termination in her termination report: she violated Matheson's nepotism and hiring policies (*id.* at 27, 100, 160); she violated multiple policies and procedures including but not limited to dishonesty and an inability to follow directives (*id.* at 51–52, 100–04, 160, 181–82); she violated the company's credit card and expense report policies (*id.* at 30, 68, 101, 107, 138, 146, 160, 172, 175–76); and she violated the attendance policy (*id.* at 26, 54, 55, 101–02). (*See also id.* at 100–03.) Ms. Flowers believes she "was discriminated against for being a woman in a males['] workplace" and for "requesting a pay equality report to provide to the State of New Mexico per contractual agreement." (*Id.* at 56.) Matheson contends that it had legitimate, non-discriminatory reasons for terminating her. (Doc. 117 at 25.)

## III.    Analysis

### A.   Count One

Ms. Flowers brought a claim pursuant to the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. §§ 28-1-7–14, alleging employment discrimination and retaliation. In response to Matheson's motion, Ms. Flowers failed to submit any evidence or argument in support of her discrimination and retaliation claim. (*See* Doc. 124.) Ms. Flowers did, however, attach her EEOC/HRB charge of discrimination form to her complaint. (*See* Doc. 117-1 at 210–11.) Because the Court prefers to reach the merits, the Court will analyze the facts presented in light of Ms. Flowers' charge of discrimination form.

#### a)   NMHRA-Discrimination

As "Plaintiff['s] burden under the NMHRA is identical to [her] burden under Title VII, [the Court's] analysis of the federal law applies equally to [her] state-law claim[s]." *Orr v. City of*

*Albuquerque*, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005) (citing *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 954 P.2d 65 (N.M. 1998)). To prevail, the plaintiff "must establish intentional discrimination through either direct or indirect evidence." *Id.* at 1149 (citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). If no direct evidence of discrimination is present, "the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework is used to indirectly prove intentional discrimination." *Id.* Under the *McDonnell Douglas* framework, if the plaintiff shows "a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citing *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir. 2000)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Id.* (citing *Kendrick*, 220 F.3d at 1226).

Because Ms. Flowers has presented no direct evidence of discrimination, she must establish a prima facie showing of discrimination by proving that she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for her position; and (4) was terminated under circumstances giving rise to an inference of discrimination. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). "The . . . Plaintiff['s] burden in articulating a prima facie case is slight." *Orr*, 417 F.3d at 1149. "At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *Horizon/CMS Heathcare*, 220 F.3d at 1193. "At the prima facie stage, the plaintiff's burden is 'not onerous,' which is evidenced by the 'small amount of proof necessary to create [an inference of discrimination].'" *Orr*, 417 F.3d at 1149 (quoting *EEOC v. Flasher Co. Inc.,* 986 F.2d 1312, 1318 (10th Cir. 1992))

(internal quotation omitted). Knowing that her burden is light, Ms. Flowers must only show "that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick*, 220 F.3d at 1227 (quotation omitted).

The only evidence to make out a prima facie showing of discrimination in this case is Ms. Flowers' EEOC/HRB charge of discrimination. (*See* Doc. 117-1 at 210–11.) Even if the Court were to find that her EEOC/HRB charge of discrimination satisfies her prima facie burden, it is not enough to withstand summary judgment because Matheson adequately rebutted the presumption against it, and Ms. Flowers has offered no evidence to show that its actions were pretextual.

If the plaintiff "establishes a prima facie case, a rebuttable presumption arises that the defendant unlawfully discriminated against the plaintiff." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993)). To rebut this presumption, the defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *DePaula*, 859 F.3d at 970 (citing *McDonnell Douglas*, 411 U.S. at 802). "The defendant's burden is 'exceedingly light,' as its stated reasons need only be legitimate and non-discriminatory 'on their face.'" *Id*. (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 899–900 (10th Cir. 2017); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011)). The defendant must offer "'admissible evidence' of a 'legally sufficient' explanation for the employment action that raises a genuine issue of material fact 'as to whether [the defendant] discriminated against the plaintiff.'" *Id*. (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The defendant's burden is one of production, not persuasion, and involves no credibility assessment. *Id*. Therefore, the Court should not consider "whether [the]

proffered reasons were wise, fair or correct" but, instead, must consider "whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (quotation omitted).

As noted above, even if Ms. Flowers produced enough evidence to meet her prima facie burden, Matheson has produced multiple instances of Flowers's alleged violations of its policies and procedures including the credit card and expense report policies; the attendance policy; the nepotism policy; and through alleged dishonesty and an inability to follow directives. Thus, Matheson has successfully shown that it had legitimate reasons for terminating her. Accordingly, the Court determines that Matheson has rebutted the presumption against it. Since Matheson has made a sufficient showing for the Court to believe that it had non-discriminatory reasons for terminating Ms. Flowers, "the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Orr*, 417 F.3d at 1149 (citation omitted). Ms. Flowers has presented no evidence to support a finding of pretext. (*See* Doc. 124.) Therefore, because she has failed to meet her final burden, Ms. Flowers's claim of discrimination under the NMHRA is dismissed.

### b)  NMHRA-Retaliation

Ms. Flowers also brought a claim pursuant to the NMHRA alleging retaliation. The NMHRA bars employers from retaliating against "any person who has opposed any unlawful discriminatory practices." N.M. Stat. Ann. § 28-1-7. To establish a prima-facie case of retaliation, the plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse

action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quoting *Argo*, 452 F.3d at 1202).

Regarding the first element, "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1218 (10th Cir. 2008) (quoting *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)). The plaintiff "need only show that when [s]he engaged in protected opposition, [s]he had a reasonable good-faith belief that the opposed behavior was discriminatory." *Hertz*, 370 F.3d at 1016 (citation omitted). To establish protected opposition, the plaintiff must do more than just carry out the normal functions of his or her job. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (noting that "[i]n order to engage in protected activity . . . the employee must step outside his or her role . . . and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting [] rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights"). Here, Ms. Flowers claims her "efforts to comply with New Mexico's Pay Equity Initiative" are legally protected activities. (Doc. 117-1 at 3.) Matheson contends, however, that these "efforts" amounted to only a few emails "sent to Human Resources and others requesting assistance in completing Pay Equity Reporting Forms . . . ." (Doc. 117 at 31.) Matheson argues that "[n]othing in Ms. Flowers' emails stated or even suggested that she was opposing unequal pay practices or some other unlawful practice . . . ." (*Id.*) In sum, Matheson contends that Ms. Flowers only sent these emails "so she could do her job and submit them with Matheson's contract bids." (*Id.*)

Besides the fact that Ms. Flowers offers no evidence to refute Matheson's contentions (*see* Doc. 124), the evidence tends to side with Matheson. Ms. Flowers never stated any concern about pay equity. (Doc. 117-1 at 75–80, 129–30, 132.) She never commented on the gender of the

employees she was seeking to help receive a pay increase; nor did she make any reference of discrimination. (*Id.*) More importantly, Ms. Flowers' requests were made for both male and female employees. (*Id.*)

Even if Ms. Flowers did engage in protected activity,[4] the Court finds no causal connection between the protected activity and the materially adverse action. *See Proctor*, 502 F.3d at 1208. A causal connection can be established with "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007). "[U]nless the termination was *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). But "protected activity cannot bear a causal relationship to adverse action if those taking the action were unaware of the existence of the protected action . . . ." *Shinwari v. Raytheon Aircraft Co.*, 215 F.3d 1337, 2000 WL 731782, at *6 (10th Cir. 2000), *overruled on other grounds by Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163 (10th Cir. 2003). "As a prerequisite to this showing, the plaintiff must present evidence from which a reasonable factfinder can conclude that those who decided to take the adverse action against the plaintiff had knowledge of the protected activity." *Walton v. N.M. State Land Office*, 113 F. Supp. 3d 1178, 1192 (D.N.M. 2015) (citing *Montes v. Vail Clinic Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) ("To satisfy [the causal connection] element, a plaintiff must show that the individual who took adverse action against [him or her] knew of the employee's protected activity.")). "[A]n employer's action against an employee cannot be *because* of that employee's protected conduct

---

[4] Matheson does not contest that "a reasonable employee would have found the challenged action materially adverse . . . ." *Proctor*, 502 F.3d at 1208. (*See* Doc. 117.)

unless the employer knows the employee has engaged in protected opposition." *Id.* (quoting *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)).

Here, causation is not present for two reasons. First, Ms. Flowers cannot show causation through temporal proximity. Ms. Flowers requested the Pay Equity Reporting Forms be filled out on August 15, 2017 (Doc. 117-1 at 41–42, 80), and June 7, 2018 (*id.* at 44, 87–88.)  Ms. Flowers was not terminated until August 23, 2018. (*Id.* at 146, 161.) This temporal proximity does not give rise to an inference of causation. *See, e.g.*, *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (time period between two to three months not sufficient alone to establish causation). Second, no evidence shows that Matheson knew she was opposing unlawful conduct. Ms. Flowers made requests as part of her regular duties—the State of New Mexico requested information in connection with a contract bid and she acted to obtain the bid. (Doc. 117-1 at 18–19, 80.) Nowhere in the record does Ms. Flowers mention or speak of unlawful discrimination. (*See id.* at 75–80, 129–30, 132.) Therefore, the Court has no reason to find that Matheson knew of Ms. Flowers' opposition. *See Petersen*, 301 F.3d at 1188 (precluding plaintiff's retaliation claim because there was an "absence of a reference to unlawful discrimination" and, therefore, employer had no cause to believe that plaintiff was opposing unlawful conduct). In conclusion, the Court will grant Matheson's motion for summary judgment and dismiss Count I of Ms. Flowers' Complaint.

### B.  Count Two

#### a)  Common-law Retaliation

Ms. Flowers's only remaining claim is one for common-law retaliation. (*See* Doc. 117-1 at 4.) Ms. Flowers failed to respond to the Matheson's argument regarding whether N.M. Exec. Order 2009-49 "gives rise to a clear mandate of public policy restricting [the defendant's] choice not to voluntarily provide pay equity reporting forms to third-parties." (Doc. 117 at 36.) Nor did she

include any evidence or argument regarding common-law retaliation in her response brief. (*See* Doc. 124.) Outside of the allegations in the complaint, Ms. Flowers has submitted nothing in support of her claim. Accordingly, the Court finds that Ms. Flowers has waived this claim. The Court will grant the motion and dismiss the common-law retaliation claim against Matheson.[5]

### C.  Ms. Flowers' Surreply

Ms. Flowers contends that "Matheson argue[d] for the first time [in its reply] . . . that [her] claims for unequal pay and retaliation . . . [under the Fair Pay for Women Act, N.M. Stat. Ann. §§ 28-23-1–6 (FPWA),] have never been before this Court because they were . . . not within the scope of the Complaint." (Doc. 129-1 at 1) (internal quotations omitted).) Because Matheson's reply purportedly offers new material and evidence, Ms. Flowers claims that she should be permitted to file a surreply. (Doc. 129 at 2.) The Court agrees with Ms. Flowers that Matheson did not offer this material in their Motion for Summary Judgment. The Court also notes, however, that Ms. Flowers raised the issue of an FPWA claim in her response to Matheson's Motion. (*See* Doc. 124 at 2.) Matheson then responded to Ms. Flowers's argument in its reply. When an issue is raised by a litigant for the first time in a response, the opposing side can respond to the new issue in their reply. *See Lunnon v. United States*, No. CV 16-1152 MV/JFR, 2020 WL 7090526, at *3 (D.N.M. Dec. 4, 2020) (stating that when the United States addressed an issue in its reply that the plaintiff raised for the first time in his response, it "[did] not amount to raising a new issue for the first time"); *Davis v. Kutak Rock, LLP*, No. 09-CV-02768-REB-MJW, 2013 WL 1222373, at *2 (D. Colo. Mar. 25, 2013), *aff'd sub nom. Davis v. King*, 560 F. App'x 756 (10th Cir. 2014) (noting that material presented to address contentions plaintiff raised in her response is "appropriate"). Therefore, Ms. Flowers's motion should be denied for this reason alone. Even if the Court were to

---

[5]Ms. Flowers, in her response, mentions "her Fair Pay for Women Act claims" (Doc. 124 at 2), but the Court notes that these alleged claims were not specifically mentioned in her complaint. (*See* Doc. 117-1 at 2–5.)

address the merits of the argument in her surreply, however, the Court would not grant her the relief she seeks for the reasons outlined below.

In her response, Ms. Flowers argues that her Complaint asserts claims under the FPWA (unequal pay and retaliation for opposition to unequal pay)[6] because it sufficiently raises the claim under New Mexico's Notice Pleading Standard. (Doc. 129-1 at 1.)  Not only does Ms. Flowers' Complaint not discuss the issue of unequal pay or cite to the FPWA (*See* Compl.), she is now before a federal court, which adheres to the *Twombly/Iqbal* heightened pleading standard, not New Mexico's Notice Pleading Standard. *See Isengard v. N.M. Pub. Educ. Dep't*, No. Civ. 08-0300, JB/RLP, 2009 WL 5220371, at *5 (D.N.M. 2009) ("Courts in New Mexico have not adopted the pleading requirements of the Federal Rules of Civil Procedure that the Supreme Court . . . enunciated in [*Twombly/Iqbal*]."). "New Mexico uses notice pleading, which requires that plaintiffs allege facts sufficient only to put the defendant on fair notice of their claims." *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1134 (D.N.M. 2017) (citations omitted). "A complaint filed in New Mexico state court is thus subject to a relaxed pleading standard; once the case is removed to federal court, however, the complaint is subject to the more rigorous *Twombly/Iqbal* standard." *Id.* (citation omitted).

Under the *Twombly/Iqbal* heightened pleading standard, a complaint must provide fair notice of the claims and allegations against each individual defendant. Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead his or her claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). This notice pleading standard and *Twombly's* "requirement of

---

[6] Ms. Flowers argues that "Matheson is wrong in claiming these [unequal pay and retaliation] claims are not before the Court . . . [because] the Complaint is sufficient . . . under New Mexico's Notice Pleading Standard." (Doc. 129-1 at 1.)

plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In the determination of what constitutes "fair notice" to defendants, the Court must consider the nature of the claim and the elements required to prove the claim. *Id.* "A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id.* (citation omitted). A complex § 1983 case, however, requires more specificity in the factual pleadings, and "[t]he *Twombly* standard may have greater bite in such contexts . . . ." *Id.* at 1249 (citations omitted).

Here, Ms. Flowers attempts to argue that her "Complaint placed Matheson on notice that she was bringing discrimination and retaliation claims under the Human Rights Act, **and** alleged discriminatory and retaliatory conduct in general terms." (Doc. 129-1 at 2) (emphasis added).) The Court will dispose of these arguments, beginning with Ms. Flowers' contention that she "alleged discriminatory and retaliatory conduct in general terms." Ms. Flowers supports this notion by citing to paragraph 14 of her complaint to support this contention. There, she wrote:

> By the conduct alleged above Defendant discriminated against Plaintiff on the basis of her sex, and further subjected Plaintiff to reprisal and discrimination because she opposed unlawful discriminatory practices and because she filed one or more complaints under the New Mexico Human Rights Act. **Defendant's conduct therefore violated NMSA 1978 § 28-1-7(1)(2).**

(Doc. 117-1 at 3) (emphasis added).) By stating that Matheson violated the Human Rights Act, the Court finds that Ms. Flowers did not intend to allege discriminatory and retaliatory conduct in general terms; she meant to allege specific violations of a statute. Next, Ms. Flowers argues that her "unequal pay and retaliation claims were within the scope of the [NM]HRA cause of action" because they were "actionable under both the Human Rights Act and separately under the Fair Pay

for Women Act." (Doc. 129 at 2.) Claims actionable under the FPWA may also be brought under the NMHRA. *See* N.M. Stat. Ann. § 28-23-4(A)(2). But the fact that Ms. Flowers could have asserted a claim under the FPWA does not mean that the Court will automatically read such a claim into her Complaint. The Court can imagine various statutes under which Ms. Flowers could have brought the alleged wrongdoings of Matheson. But in order to have a claim, one must outline what statutes the defendant has allegedly violated. It is not the Court's job to tell the plaintiff what statutes can be used; it is the plaintiff's job to craft a complaint in such a way as to give the defendant clear, fair notice of what they are defending.

Ms. Flowers also argues that "[her]Complaint should be deemed amended to include [the FPWA claims] because Matheson impliedly consented by asking this Court to dismiss claims . . ." (Doc. 129-1 at 5.) The Court will not address this argument because "[a] party cannot supplement or amend a complaint in a brief." *Jackson v. Kelly*, No. CV 08-1131 JP/ACT, 2010 WL 11622809, at *2 (D.N.M. June 14, 2010). *See, e.g., Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) ("plaintiff may not rely on the allegations in his reply brief to supplement his complaint . . . ."); *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1057 (7th Cir. 1988) ("assertions contained only in the briefs may not be used to expand the allegations of the complaint"); *Coleman v. Keebler Co.*, 997 F.Supp. 1094, 1101 (N.D. Ind. 1998) ("it is well-settled that the Plaintiff cannot amend her complaint with a later filed brief in opposition to a summary judgment motion"). In sum, the Court will deny the motion to file a surreply. It also finds that Ms. Flowers did not sufficiently assert a claim under the FPWA in her Complaint.

**THEREFORE,**

**IT IS ORDERED** that Matheson's Motion for Summary Judgment as to all of Ms. Flowers' claims (Discrimination, Retaliation, and common-law retaliation) (Doc. 117) is **GRANTED**, and they are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to File Surreply is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

18